UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   8:23-cv-01573 MWC (DFMx)                                    Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

Present: The Honorable:   Michelle Williams Court, United States District Judge

| T. Jackson | No Reporter |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs: N/A     Attorneys Present for Defendants: N/A

**Proceedings: (IN CHAMBERS) The Court DENIES Plaintiff's motion to amend the complaint (Dkt. 72); DENIES Plaintiff's motion to modify the scheduling order (Dkt. 75); and GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. 68).**

     Before the Court are three motions. First, Plaintiff Christian Yeung ("Plaintiff") filed a motion for leave to amend the First Amended Complaint ("FAC"). Dkts. # 63 ("*Amend Mot.*"); 72. The proposed amended complaint seeks to add an additional defendant and three new causes of action. *Amend Mot.*; *see* Dkt. #72-1 ("*Proposed SAC*"). Defendant City of Huntington Beach (sued as the Huntington Beach Police Department) (the "City") and individual defendants Officer Joseph Giles, Officer Cameron Houlston, and Officer Lucas Patrick ("Defendant Officers") (collectively herein, "Defendants") opposed.[1] Dkt. # 107. Plaintiff replied. Dkt. # 110. After briefing on Plaintiff's motion for leave had closed, Plaintiff submitted a supplemental filing seeking to add a second new defendant. Dkt. # 117 ("*Supp. Req.*").[2]

     Second, Plaintiff filed a motion for leave to modify the scheduling order. Dkt. # 75. In light of the proposed amendment, Plaintiff seeks to reopen discovery and

---

[1] Defendant The Bungalow Huntington Beach, LLC ("The Bungalow") did not join in the motions, so the term "Defendants" as used herein refers only to moving defendants.

[2] Defendants have not had a chance to respond to Plaintiff's new proposed amended complaint. *See* Dkt. # 117-3. Nonetheless, because the arguments on the merits of the motion for leave to amend apply equally to the untimely filing, the Court addresses it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                                    Date: August 6, 2025

Title      Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

continue the discovery cut-off and related deadlines by 45 days. *See generally id.* Defendants opposed, Dkt. # 90, and Plaintiff replied, Dkt. # 109.

Third, Defendants filed a motion for summary judgment. Dkt. # 68 ("Motion" or "*MSJ*"). In support, Defendants filed a Separate Statement of Undisputed Material Facts, ("UF"), Dkt. # 69, and supporting exhibits, Dkt. # 70. Plaintiff opposed, Dkt. # 114 ("*Opp.*"), and filed a Statement of Genuine Issues of Material Fact in Dispute, Dkt. # 114-1 ("*UF Opp.*"), a declaration and supporting exhibits, Dkt. # 114-2–12, and an application to lodge six of the exhibits under seal, Dkt. # 114-13–14. Defendants replied. Dkt. # 116.

The Court finds all three matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving, opposing and reply papers, the Court **DENIES** Plaintiff's motion for leave to amend the complaint; **DENIES** Plaintiff's motion to modify the scheduling order; and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

I.     Background

      A.      Factual Background

This case involves Plaintiff's alleged assault, battery, and unlawful arrest on May 30, 2021. *See* Dkt. # 1-1. Except as noted below, the following material facts are sufficiently supported by admissible evidence and "admitted to exist without controversy" for purposes of the Motion for Summary Judgment ("Motion") before the Court. L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

On the evening of May 30, 2021, Plaintiff was at The Bungalow, a lounge and restaurant in Huntington Beach, California, that serves alcohol. *UF Opp.* ¶ 2; Dkt. # 114-2 ("*Yeung Decl.*"), Ex. K. There, Plaintiff consumed two to three alcoholic beverages over the course of the evening. *Yeung Decl.*, Ex. A ("*Yeung Depo.*") 20:9–11. At approximately 8:40 p.m., Plaintiff initiated a conversation with a security guard at the entrance of The Bungalow, a "bouncer" named Justin Timothy Harris Bell ("Mr. Bell"). *Yeung Decl.*, Ex. E at 8, 11; *Yeung Depo.* 161:3–9. Plaintiff offered Mr. Bell money in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                              Date: August 6, 2025

Title      Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

exchange for letting his friend skip the entrance line. *Yeung Depo.* 26:2–17.  Mr. Bell declined. *Id.*  Another staff member of The Bungalow, a host, came forward to tell Plaintiff, "You can't do that." *Id.* 27:4–6.  She asked Plaintiff to go back inside. *Id.* 27:4–21.  Mr. Bell told Plaintiff to leave, then pushed Plaintiff, causing him to fall down several stairs. *Yeung Depo.*, 28:20–21; *Yeung Decl.*, Ex. C (surveillance footage of incident).  Plaintiff caught himself, rushed back up the stairs and was pushed away again, this time by a different person. *Yeung Decl.*, Ex. C.  A second security guard working at The Bungalow that night, Kent Hughes ("Mr. Hughes"), grabbed Plaintiff to pull him away from the area. *Id.*, Ex. E at 10.  A security guard from the surrounding mall approached the scene and called the police at Plaintiff's behest, so that Plaintiff could report the assault. *Yeung Depo.* 33:7–12.  Plaintiff testified that the security guard, a Black man, warned Plaintiff, "[J]ust make sure that you understand if you call the police, they're not very fond . . . of people like you and me." *Id.* 34:1–4; 162:17–163:13; *Opp.* 7:1–6.

At approximately 9:08 p.m., Defendant Officers (Officers Giles, Houlston, and Patrick) and Officer Aaron Ecsedy ("Officer Ecsedy") responded to the scene at The Bungalow. *UF Opp.* ¶ 3.  Officer Ecsedy interviewed three witnesses involved in the earlier altercation: Mr. Bell, Mr. Hughes, and the host at The Bungalow. *Yeung Decl.*, Ex. E at 5, 9–10.

Meanwhile, about 30 feet away from the entrance of The Bungalow, Officer Giles spoke with Plaintiff. *UF Opp.* ¶ 5; *Yeung Decl.*, Ex. L ¶¶ 4–5; *Yeung Depo.* 71:7–12.  Officer Giles used a flashlight to examine Plaintiff's injuries, which included a bleeding knee, bruised neck, bruise on his left chest, and scratches on his inner right bicep. *Yeung Depo.* 33:16–22; *Yeung Decl.*, Ex. L ¶¶ 55–56.  Plaintiff's voice was somewhat hoarse, but he was able to answer basic questions. *UF Opp.* ¶ 5; *Yeung Decl.*, Ex. L ¶ 28.  Plaintiff expressed some emotion during the encounter. *Yeung Depo.* 200:16–19.  Plaintiff testified that one officer facetiously asked if Plaintiff wanted an "ambulance" or a "Band-Aid" for his injuries and described them as "a little, itty-bitty scrape," while another officer called the neck injury a "hickey." *Id.* 44:2–17.

At some point, Plaintiff pointed over at the witnesses who had been interviewed. *Id.* 63:22–24.  Officer Giles instructed Plaintiff to "[w]atch where you're pointing, you almost hit me in the head." *Id.* 63:5–9; Dkt. # 70 at 8 ¶ 6.  Officer Giles informed Plaintiff that The Bungalow no longer wanted him on the premises and instructed him to leave. *UF Opp.* ¶ 6.  Plaintiff agreed, but did not immediately leave. *Id.* ¶¶ 6–7; *Yeung*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01573 MWC (DFMx)                                        Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

*Depo.* 41:8–14.  Plaintiff testified, "I told them that I was going to leave but there was a crime that occurred and I needed documentation of that."  *Yeung Depo.* 82:16–21.  He asked Defendant Officers, "What are we going to do about this – this stuff that's on me?", referring to his visible injuries.  *Yeung Depo.* 43:12–20.  Defendant Officers responded that "[n]o crime has been committed."  *Id.* 43:21–22.  Defendant Officers did not give any further assurance that they would file a police report or investigate The Bungalow for the alleged violation of Penal Code section 242, battery.  *Yeung Decl.*, Ex. N ¶ 41.

Shortly thereafter, Officer Giles placed Plaintiff in handcuffs.  *Id.*, Ex. L ¶ 20.  Plaintiff testified Defendant Officers gave him about thirty seconds from the time they asked him to leave to when he was arrested.  *Yeung Depo.* 42:3–8.  Plaintiff testified that, when he asked why he was going to jail, Officer Giles informed Plaintiff he was under arrest for violation of Penal Code Section 647(f), public intoxication.  *Yeung Decl.*, Ex. L ¶ 20; *see also Yeung Depo.* 47:8–9 (Plaintiff testifying that Officer Giles told him, "Well, you've had a little bit too much to drink tonight.").  Plaintiff testified that this surprised him, because he was not drunk.  *Yeung Depo.* 47:11–14; 21–22.  Plaintiff testified that Officer Giles then turned off the audio on his body-worn camera and told Plaintiff "that if I'm not going to comply, that he's going to take me to jail. . . That I should have listened, that he gave me the opportunity to leave."  *Id.* 47:15–16.  Plaintiff testified that his conversation with Officer Giles while the audio was muted "had nothing to do with alcohol" and "everything to do with him trying to get me to leave and me not wanting to leave and having to now arrest me to get me to leave."  *Id.* 48:2–6.  Plaintiff testified Officer Giles then turned on his body-worn camera audio.  *Id.* 48:7–8.

Plaintiff testified that, throughout his encounter with the police, he "was not inebriated in any form or any way," and that his "mental ability and my physical abilities were not impaired by alcohol[.]"  *Id.* 200:11–15.  But Officer Giles, in his case summary report, described Plaintiff's prior to the arrest as follows:

> "As I began speaking with YEUNG, I smelled the strong odor of an alcoholic beverage on his breath and person. YEUNG's eyes were blood shot and watery.  When YEUNG spoke his speech was slurred and deliberate.  YEUNG was very animated and had difficulty controlling the flailing of his limbs.  At one point I had to raise my left arm to block my head from YEUNG's flailing arms.  When I asked YEUNG to please be more careful with his arms as he spoke, he claimed he did not nearly hit me in the head."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  8:23-cv-01573 MWC (DFMx)                                              Date: August 6, 2025

Title     Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

*Yeung Decl.*, Ex. E at 5; *see also* Dkt. #70 at 11 ¶ 6. Prior to the arrest, Officer Giles received field sobriety test training, "which included how to identify whether a person is under the influence of alcohol based on the smell of their body, breath and their actions." *UF Opp.* ¶ 4. Officer Giles previously spent three years on the police department DUI team and made over four hundred DUI arrests. *Id.*

The booking process took place around 9:38 p.m. *Yeung Decl.*, Ex. E at 13. At the police station, Officer Cortez completed an "Inmate Special Placement Form" that included an intoxication observation assessment. *Id.* 14. Officer Cortez described Plaintiff's coordination as "fair," speech as "soft," odor of alcohol as "slight," eyes as "watery/glassy," and behavior as "cooperative." *Id.* In a Medical Screening Questionnaire completed during booking, Officer Giles responded to the question, "Does the Arrestee have any injuries, or was involved in an accident/altercation?" with No. *Id.* 16. Plaintiff was released around 1:10 a.m. *Id.* 13.

   B.     Procedural History

On May 30, 2023, Plaintiff initiated this action in Orange County Superior Court. *See* Dkt. # 1. On August 23, 2023, Defendants removed the case to this Court, asserting federal question jurisdiction. *Id.* On July 26, 2024, Plaintiff filed the operative First Amended Complaint ("FAC"). *See* Dkt. # 27. Defendant The Bungalow Huntington Beach, LLC ("The Bungalow") brought a motion to dismiss the claims against it. Dkt. # 31. The motion was granted in part, and the following claims remain:

- (1) A claim for assault pursuant to Cal. Civ. Code § 43 against The Bungalow and Does 1-20;

- (2) A claim for battery against The Bungalow and Does 1-20;

- (3) A claim for false arrest against the Defendant Officers and Does 1-20, in violation of 42 U.S.C. § 1983; and

- (4) A *Monell* claim against the Huntington Beach Police Department in violation of 42 U.S.C. § 1983.

*See* Dkt. 38, 3:4–14, 7:21–22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01573 MWC (DFMx)                                                    Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

II.   Motion for Leave to Amend

The Court starts with Plaintiff's motion for leave to amend the operative FAC. *See Amend Mot.*; Dkt. # 72.

   A.   Legal Standard

When a party seeks to amend its complaint, the Court may deny leave to amend after considering "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation marks omitted) (*quoting Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). Although the "general rule" is that leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), delay is a relevant—though non-dispositive—factor in the court's analysis, "especially when no reason is given for the delay," *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Moreover, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). And "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin*, 194 F.3d at 986. Finally, "[w]here the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend." *Id*.

   B.   Discussion

      i.   *Officer Ecsedy*

Plaintiff moves pursuant to Rule 15(a)(2) to amend the complaint to add three constitutional claims and another defendant, Officer Ecsedy. *See Amend Mot.*; *Amend Reply*. Defendants oppose Plaintiffs' motion primarily on the grounds of undue delay and prejudice. *Amend Opp.* The Court agrees with Defendants and finds the combined undue delay in litigation and prejudice to the proposed and current defendants necessitates denial of leave to amend.

Regarding the proposed inclusion of Officer Ecsedy, Plaintiff asserts he only recently reviewed Officer Ecsedy's body-worn camera footage, which revealed the role he played in Plaintiff's arrest and follow-up investigation. *Amend Mot.* 2:4–10; *Amend*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                                                  Date: August 6, 2025

Title     Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

*Reply* 2:24–3:5.  But that footage was provided to Plaintiff on December 15, 2023.  *Amend Opp.* 3:10–13.  Plaintiff does not suggest he was denied the opportunity to review the discovery Defendants provided.  *See Amend Mot.*  Courts in the Ninth Circuit have held that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[I]n evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'").  Here, the Court finds a delay of more than 15 months was unreasonable.

The Court also finds Officer Ecsedy and Defendants would be substantially prejudiced by the proposed amendment.  Contrary to Plaintiff's assertion that "Officer Ecsedy's involvement is not new to the defense," and "[n]o new discovery is required," *Amend Reply* 4:1–7, both Officer Ecsedy and the existing defendants would be subject to additional discovery to accommodate his addition.  Officer Ecsedy "would not be required to simply step in on the eve of trial and accept this case as he finds it, without being afforded the opportunity to prepare his own defense." *Lang v. State of Cal.*, No. C 91-1895 BAC, 1994 WL 28042, at *1 (N.D. Cal. Jan. 21, 1994).  Had Officer Ecsedy been a defendant throughout the litigation, both he and Defendants might have responded differently to discovery and motion practice, or pursued a different strategy in defending the case.  And in the 15 months that passed from when Plaintiff knew of Officer Ecsedy and the date Plaintiff moved to bring him into the case as a defendant, "memories have faded, documents may have been lost, and witnesses may have disappeared—all to [Officer Ecsedy]'s detriment."  *See id*.  Plaintiff does not provide sufficient justification for why Officer Ecsedy, rather than Plaintiff, should bear the burden of the delay.

    ii.  *Additional constitutional claims*

Plaintiff's proposed three additional constitutional claims are premised on allegations concerning Officer Ecsedy.  *See generally Proposed SAC.*  As explained above, the Court finds Plaintiff's proposed amendment of additional claims is unduly delayed.

Accordingly, the Court **DENIES** Plaintiff's motion for leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01573 MWC (DFMx)                                                    Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

   *iii.* *ATF Private Security Inc.*

 The Court now turns to Plaintiff's supplemental request to add ATF Security Inc. ("ATF") as a defendant.  *See Supp. Req.*

 Plaintiff issued interrogatory requests to The Bungalow on or around May 22, 2025.  Dkt. # 85 at 4:18-21.  Fact discovery closed on June 8, 2025.  Dkt. #54; Dkt. # 88 at 2.  On July 16, 2025, The Bungalow provided supplemental responses to Plaintiff's written interrogatory requests.  Dkt. # 117-2 ¶ 2.  In them, The Bungalow for the first time identified ATF as the sole security company or agency "employed, subcontracted, hired, independently contracted, or associated by [The Bungalow] on May 30, 2021."  *Id.* ¶ 4 & Ex. A.  On July 19, 2025, Plaintiff filed a supplement to his motion for leave to amend seeking to add ATF as a defendant.  *Supp Req.*

 Here, Plaintiff quickly requested leave to amend upon discovering new information.  However, the Court finds Plaintiff was also at fault in only obtaining this information now, at this late stage.  Plaintiff does not explain why he waited so long to propound interrogatories on The Bungalow.  Had Plaintiff sought discovery with enough time to bring a motion to compel responses prior to the discovery motion cutoff, he would have gotten the information he needed to amend the pleadings well before this close to trial.

 Further, "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."  *Lockheed Martin*, 194 F.3d at 986.  The Court finds adding ATF at this late juncture would be prejudicial.  Courts in the Ninth Circuit regularly deny leave to amend where the plaintiff's request is so far into the proceedings that it would prejudice defendants.  *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (affirming denial of leave to amend where the plaintiff sought leave to amend after discovery closed and "just four and a half months before the trial date" because defendant "would have been unreasonably prejudiced by the addition of numerous new claims so close to trial"); *Diederich v. Providence Health & Servs.-Wash.*, No. CV-10-1558-RAJ, 2016 WL 9241273, at *1 (W.D. Wash. Oct. 26, 2016) (denying leave to amend complaint based on new information where it was filed two months before trial); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of plaintiff's motion for leave to amend where proposed amendment would have added additional claims that would have required further discovery and discovery was set to close five days after motion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)             Date: August 6, 2025

Title     Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

amend was filed). Plaintiff makes his request with even less time prior to trial than the cases cited above, and more than a month after discovery closed.

Accordingly, the Court finds adding ATF as a defendant to this case, at this stage, is not warranted. Plaintiff's motion for leave to amend the complaint is **DENIED**.

III.     Motion to Modify the Scheduling Order

Plaintiff moves the Court to reopen discovery and push back discovery-related deadlines by 45 days, "in light of Defendants' failure to timely respond to written discovery requests, ongoing discovery disputes, and newly discovered evidence." Dkt. # 75-1 at 2.

The decision to modify a scheduling order is within the broad discretion of the district court. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (*quoting Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir.1985)). Federal Rule of Civil Procedure ("Rule") 16 provides a stringent standard where the party who seeks to amend the Court's scheduling order must show "good cause" why the Court should set aside or extend a discovery deadline. *See* Fed. R. Civ. P. 16(b)(4). Under Rule 16(b)'s good cause standard, the Court's primary focus is on the movant's diligence in seeking the amendment. *Johnson*, 975 F.2d at 609. If the party seeking modification was not diligent in his pretrial preparations, the inquiry should end there, and the measure of relief sought from the Court should not be granted. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002).

The Court finds Plaintiff has not shown good cause to modify the scheduling order. Attempting to demonstrate diligence, Plaintiff states he "did not assume control of this case until March 21, 2025, when the Court granted former counsel's motion to withdraw." Dkt. # 109 at 2:9–23. This does not explain why neither he nor his counsel served discovery requests earlier. Plaintiff's point that The Bungalow also served its own written discovery just before the discovery cutoff does not affect the Court's analysis, because it is not the one seeking to modify the scheduling order.

For lack of good cause shown, the Court **DENIES** Plaintiff's motion to modify the scheduling order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                                         Date: August 6, 2025

Title  <u>Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*</u>

IV. <u>Motion for Summary Judgment</u>

    A. <u>Stipulation and Application to Seal</u>

As a preliminary matter, the Court reviews (1) whether Defendants' exhibits in support of the Motion (Dkt. # 70) were properly filed under seal, and (2) Plaintiff's application to file six exhibits in support of the Opposition under seal (Dkt. # 114-14).

        *i.* *Legal Standard*

Sealing judicial records is generally disfavored because there is a "strong presumption in favor of public access." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003). The public access presumption is based on the need for federal courts to be accountable and for the public's "confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal quotation marks and citation omitted). Typically, a party moving to seal a judicial record "bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety*, 809 F.3d at 1096–97. The court then balances the "competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (*quoting Foltz*, 331 F.3d at 1135).

        *ii.* *Defendants' sealed exhibits*

Defendants did not apply for leave to file its exhibits in support of the Motion (Dkt. # 70) under seal, as required by Local Rule 79-5.2. After Defendants filed the Motion, the parties stipulated to file all documents related to the Motion under seal. Dkt. # 89. The Court denied it for lack of good cause shown. Dkt. # 108.

On its own motion, the Court finds compelling reasons for sealing exist only as to Exhibit C, the police report concerning the subject incident. Defendants are thus **ORDERED** to publicly refile the document (Dkt. # 70) with only Exhibit C redacted, within one week of issuance of this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01573 MWC (DFMx)                                    Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

        *iii.*    *Plaintiff's application to seal*

The Court has reviewed Plaintiff's application to file six exhibits under seal. Dkt. # 114-14 ("*Sealing App.*"). With it, Plaintiff lodged with the Court a USB thumb drive containing the following:

- Exhibit A: Excerpts from Plaintiff's deposition transcript;

- Exhibit B: Huntington Beach Police Department "Inmate Special Placement Form";

- Exhibit C: Surveillance footage from The Bungalow;

- Exhibit E: Case summary report, supplemental reports, and Plaintiff's booking report;

- Exhibit I: Pictures of Plaintiff's injuries; and

- Exhibit J: Recording from Officer Ecsedy's body worn camera of his interview of two witnesses, Mr. Justin Bell and Mr. Kent Hughes, concerning the subject incident at The Bungalow.

*See* Dkt. # 114-13 at 2. Plaintiff cites to these exhibits in his Statement of Genuine Issues of Material Fact. *See UF Opp*.

In his application to seal, Plaintiff does not engage the "compelling reasons" standard and addresses only good cause, which is sufficient grounds to deny the application. *See Sealing App.* 2:18–3:2. The Court nonetheless considers whether Plaintiff's stated rationales constitute "compelling reasons" that overcome the heightened presumption of public access, particularly where the materials directly relate to the core merits of the case. *See Kamakana*, 447 F.3d at 1177 (the "strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments"). Plaintiff avers that the materials contain (1) personal identifying information, including addresses and phone numbers; (2) law enforcement recordings and photos that are "not appropriate for public viewing"; and (3) "sensitive investigatory materials." *Sealing App.*, 2:20–26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   8:23-cv-01573 MWC (DFMx)                                     Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

The Court finds "compelling reasons" that overcome the presumption of public access exist only as to Exhibits B (Plaintiff's inmate placement form) and E (Plaintiff's case summary reports). Accordingly, the Court **GRANTS** the application to seal as to Exhibits B and E, but otherwise **DENIES** the application.

B.   Motion for Summary Judgment Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [ ] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The Court "draws all inferences in the light most favorable to the nonmoving party." *Id.*

C.   Discussion

Defendants move for summary judgment on Plaintiff's federal false arrest claim as to the Officers, and on Plaintiff's *Monell* claim as to the City. *See generally MSJ.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                                      Date: August 6, 2025

Title     Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

      *i.*    *Section 1983 claim*

Defendants argue that Plaintiff's Section 1983 claim for false arrest is without merit because his arrest was supported by probable cause. *MSJ* 11–14. Defendants also argue that, even if the Court did not find probable cause, Defendant Officers are still entitled to summary judgment on the claim. *MSJ* 9–11. Plaintiff argues that the existence of multiple disputes of material facts precludes summary judgment. *Opp.* 16–24, 26–30.

      *a.*    *Probable Cause*

A warrantless arrest by an officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest; "[a]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153. The question of probable cause is typically a mixed question of law and fact, but when "[t]he facts are undisputed, . . . the existence of probable cause is a question of law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012).

Here, the stated grounds for Plaintiff's arrest was public intoxication, in violation of California Penal Code § 647(f).11. Public intoxication constituting misdemeanor disorderly conduct occurs where "the arrestee is (1) intoxicated (2) in a public place and either (3) is unable to exercise care for his own safety or the safety of others or (4) interferes with or obstructs or prevents the free use of any street, sidewalk or public way." *People v. Lively*, 10 Cal.App.4th 1364, 1368-69 (1992) (emphasis original). The last two elements require that a person's conduct "pose[ ] a safety hazard." *See People v. Kellogg*, 119 Cal.App.4th 593, 602-03 (2004) (emphasis omitted). Therefore, Defendant Officers are entitled to summary judgment "if there is no genuine issue, based on the facts before the Court, regarding whether it was reasonable for [Defendant Officers] to believe that [Plaintiff] was so intoxicated that he was unable to care for his own safety or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                                      Date: August 6, 2025

Title      Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

the safety of others." *See Badalyan v. City of Glendale*, No. 2:20-cv-08089-JWH-JEMx, 2021 WL 8892814, at *4 (C.D. Cal. Dec. 27, 2021).

    Some undisputed facts suggest Defendant Officers had probable cause to arrest Plaintiff.  It is not reasonably disputed that, when Defendant Officers first encountered Plaintiff, he was coming out of an establishment that serves alcohol, *UF Opp.* ¶ 2; Plaintiff had two to three drinks earlier in the evening, *Young Depo.* 20:9–11; the Officers knew Plaintiff had just been involved in a violent altercation with security guards and staff, *UF Opp.* ¶ 3; as the Officers interacted with Plaintiff, Plaintiff responded in an animated way, *Yeung Depo*. 63:5–9, 200:16–19; and when Officer Giles asked Plaintiff to leave the premises, Plaintiff did not immediately leave, *UF Opp.* ¶¶ 6–7.  At the police station, the detention officer's intoxication observation sheet noted Plaintiff's eyes were watery, his coordination was fair, and there was a slight smell of alcohol on his breath. *Yeung Decl*., Ex. E at 14.

    Conversely, other facts that would support a finding of probable cause are hotly disputed.  Chief among them is Defendant Officers' attestations, in sworn declarations and signed discovery responses, that Plaintiff was acting in a manner consistent with their experience in identifying intoxicated persons.  *See* Dkt. # 70 at 7 (*Patrick Decl.*), 10 (*Giles Decl.*), Exs. D–E.  Officer Giles attests that Plaintiff smelled strongly like alcohol, had bloodshot eyes, and spoke with slurred speech. *Giles Decl.* ¶ 6.  Both he and Officer Patrick attest that Plaintiff was not in control of his limbs and flailing wildly, causing them to consider Plaintiff a safety concern.  *Giles Decl.* ¶ 6; *Patrick Decl.* ¶ 6.  But Plaintiff has put forth evidence concerning his appearance and comportment at the time of arrest that directly contradicts those facts.  Plaintiff testified that, when the police arrived, he did not feel the effects of the two to three alcoholic drinks he consumed.[3] *Yeung Depo*. 47:11–14; 21–22.  Instead, throughout his interaction with the Officers, Plaintiff avers he "spoke clearly and coherently," did not smell of alcohol, did not have

---

[3] Plaintiff's testimony that he was not, in fact, intoxicated, does not necessarily preclude a finding of probable cause.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("the validity of the arrest does not depend on whether the suspect actually committed a crime").  But if true, it is less likely that he would appear intoxicated, particularly to the degree that Defendant Officers describe.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01573 MWC (DFMx)                                                      Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

bloodshot eyes, and his "mental and physical capabilities were not impaired." *UF Opp.* ¶¶ 5, 8. [4]

Some undisputed facts also suggest Defendant Officers did not have probable cause to arrest Plaintiff. In Plaintiff's booking photograph, while not the clearest image, Plaintiff's eyes do not appear visibly red. *Yeung Decl.*, Ex. I at 3. In surveillance video from The Bungalow, Plaintiff quickly caught himself after Mr. Bell pushed him from behind, which could suggest Plaintiff retained control of his faculties. *Id.*, Ex. C. In the statements gathered from Mr. Bell and Mr. Hughes, and in Officer Ecsedy's follow-up interviews, neither witness mentioned Plaintiff being in a state of drunkenness. *See* Dkt. # 70 at 49–50; *Yeung Decl.*, Ex. J. And it is not disputed that Plaintiff remained about 30 feet away from the entrance of The Bungalow during his discussion with police and arrest. *Yeung Depo.* 71:7–12.

Viewing the evidence in the light most favorable to Plaintiff, as required under Rule 56(c), the Court holds that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Plaintiff's deposition testimony, while "uncorroborated and self-serving," nonetheless is "based on personal knowledge, legally relevant, and internally consistent" so as to establish a genuine dispute of material fact. *See Moody v. Priccio*, No. 23-CV-01621-TSH, 2025 WL 28640, at *8 (N.D. Cal. Jan. 3, 2025) (plaintiff's declaration and deposition testimony established genuine dispute of material fact as to whether officer had probable cause to arrest plaintiff for public intoxication). The Court is thus unable to conclude as a matter of law that the Officers had probable cause to arrest Plaintiff for public intoxication under California Penal Code § 647(f). *See, e.g.*, *Badalyan*, 2021 WL 8892814 at *5 (denying motion for summary judgment in light of conflicting evidence as to whether Plaintiff exhibited signs of intoxication); *Feiman v. City of Santa Monica*, No. CV 12-3549-JGB JCX, 2013 WL 5539389, at *6–7 (C.D. Cal. Oct. 3, 2013) (same). *Cf. Dominguez v. Cnty. of Los Angeles*, No. CV 21-6369 FMO (KSX), 2024 WL 3914873, at *7 (C.D. Cal. Aug. 15, 2024) (finding probable cause for public intoxication arrest where plaintiff "ha[d] not set forth any evidence . . . to contradict the incident report in any material

---

[4] To the extent Plaintiff suggests Defendant Officers' acted with racial prejudice or bias, the subjective reason for Plaintiff's arrest is not relevant to a probable cause analysis, so long as the facts known to the arresting officer are sufficient to create probable cause. *See Devenpeck*, 543 U.S. at 153; *Tatum*, 441 F.3d at 1094.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                              Date: August 6, 2025

Title     Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

respect . . . that Plaintiff appeared intoxicated" and collecting cases (quotations and citation omitted)).  Probable cause is generally a question for the jury, and resolving the parties' differing accounts involves credibility determinations made by jurors.  *See Daniels v. G4S Secure Sols. USA Inc.*, 2021 WL 4202521, at *4 (C.D. Cal. Aug. 12, 2021).

      *b.*      *Qualified Immunity*

The Court finds Defendant Officers are not entitled to qualified immunity.  Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 281 (2009).  In resolving whether a government official is entitled to qualified immunity on summary judgment, courts must engage in a two-pronged inquiry: (1) "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the deputies violated a constitutional right," and (2) "whether that right was 'clearly established' at the time of the alleged constitutional violation."  *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (*quoting Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam)).  "[W]here a defendant's entitlement to qualified immunity turns on genuinely disputed issues of fact, summary judgment is not appropriate."  *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1115 (N.D. Cal. 2011) (collecting cases).

In their moving papers, Defendants put forth three pages of the legal standard for qualified immunity but no analysis regarding its application here.  *See MSJ* 9–11.

As to the first prong, Plaintiff has raised triable issues of fact as to whether Defendants violated his Fourth Amendment rights by arresting him without probable cause.  *See* Section IV (C)(i)(a).

As to the second prong, for a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Ammons v. Wash. Dep't of Social & Health Servs.*, 648 F.3d 1020, 1026 (9th Cir. 2011) (quotations and citation omitted).  The right must not be stated as a broad general proposition, but rather must be defined with enough specificity to put a reasonable officer on notice that his conduct is unlawful.  *D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018).  Defendants provide more analysis on reply as to Plaintiff's clearly established right in the specific context of this case, stating, "Any reasonable officer in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                              Date: August 6, 2025

Title  Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

this position could have believed that their conduct was lawful and reasonable when Plaintiff smelled like alcohol, had just come out of an establishment that focuses on serving alcohol, and he was acting in a way consistent with the Officers' experience in identifying intoxicated persons." *Reply* 11:7–13.  But two of those three facts are disputed.  Taking the non-moving party's evidence as true, it would have been clear to a reasonable officer that arrest for public intoxication was unlawful where the arrestee exhibited no signs of intoxication, he was not obstructing public walkways, and his only manifestation of a safety threat was refusing to leave within 30 seconds.  *See, e.g.*, *Kassim Abdulkhalik v. City of San Diego*, No. 08CV1515–MMA (NLS), 2009 WL 4282004, at *5 (S.D. Cal. Nov. 25, 2009) (denying summary judgment on a claim for a public intoxication arrest without probable cause and finding defendant not entitled to qualified immunity); *Lum v. County of San Joaquin*, No. 10–1807, 2012 WL 1027667, at *6 (E.D. Cal. March 23, 2012) (same).

Accordingly, the Court finds Defendant Officers are not entitled to qualified immunity.

      *ii.*    *Monell Claim*

Plaintiff's fourth claim is for municipal liability against the City pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).  Plaintiff alleges the City "had an informal policy, practice, and custom of encouraging its officers to arrest individuals for violations of section 647(f) without sufficient evidence of intoxication, as a way of streamlining arrests of citizens and avoiding the preparation of complete and accurate police reports." Dkt. # 27 ("*FAC*") ¶ 43.  "Additionally, the [City] had an informal policy, practice, and custom of taking individuals into custody who are arrested for public intoxication without performing tests to verify whether the individuals are actually intoxicated and not suffering from a mental health emergency, and are not victims." *Id.*

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692).  However, the municipality may be held liable "only for '[its] own illegal acts'," and not vicariously liable for its employees' actions.  *Id.* (quotation and citation omitted).  To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (*quoting Monell*, 436 U.S. at 691).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01573 MWC (DFMx)                                              Date: August 6, 2025

Title   Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Here, Plaintiff alleges only informal policies. An informal policy exists when a plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127 (citation omitted). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

While Plaintiff has proffered evidence sufficient to prevent summary judgment as to his claim against Defendant Officers, the same cannot be said regarding his claim against the City. None of Plaintiff's proffered bases for his claim have adequate evidentiary support. *See Opp.* 24–26.

First, Plaintiff describes a recorded phone call that he purportedly had with Lieutenant Derezynski of the Huntington Beach Police Department, wherein the lieutenant stated the department files "a lot" of public intoxication charges, and a "high number" are later dropped by the District Attorney. *Opp.* 25: 16–23. The call was not put before the Court, so it may not speculate whether such evidence is capable of being presented at trial in a form that would be admissible in evidence, as is required of evidence presented by the parties at summary judgment. *See* Fed. R. Civ. P. 56(c)(2). Moreover, the fact that cases are later dropped by the District Attorney does not necessarily correlate to those arrests being made without probable cause. *Cf. Lawman v. City & Cnty. of San Francisco*, 159 F. Supp. 3d 1130 (N.D. Cal. 2016) (denying summary judgment on *Monell* claim where plaintiff presented, among other evidence, testimony from a nurse at the county jail that it was "'not unusual' for him to screen section 647(f) arrestees who did not appear to be drunk.").

Second, Plaintiff submits transcript excerpts from a preliminary hearing in a different case and argues Officer Giles "admitted under oath that he failed to include critical exculpatory details and video evidence in his police report." *Yeung Decl.*, Ex. D; *Opp.* 25:25–28. Plaintiff argues the City's continued "reliance" on Officer Giles "shows a failure to supervise and discipline officers who violate arrestees' constitutional rights." *Opp.* 25:28–26:2. But the transcript excerpts, which are highly fragmented and include argument from opposing counsel, do not establish that Officer Giles "violated an arrestee's constitutional rights." *See id.* Even if they did—they do not—the Court may not "infer the existence of a city policy from the isolated misconduct of a single, low-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01573 MWC (DFMx)                                        Date: August 6, 2025

Title     Christian Yeung v. The Bungalow Huntington Beach, LLC *et al.*

level officer, and then [] hold the city liable on the basis of that policy"; to do so "would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*." *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) (municipality's failure to train one officer not enough to show deliberate policy).

For the same reason, Plaintiff's third rationale—that the City's failure to identify any disciplinary training or remedial steps taken after Plaintiff's arrest and Officer Giles's prior conduct demonstrates deliberate indifference to misconduct—fails. *See Opp.* 26:3–7. Neither of those examples have been established as unconstitutional actions. Even if they were, two "isolated[,] sporadic" incidents are of insufficient "duration, frequency and consistency" to create a triable fact as to the existence of an unconstitutional policy or custom. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

### iii.  *Conclusion*

Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's Section 1983 claim against Defendant Officers but **GRANTS** the motion as to Plaintiff's *Monell* claim against the City.

V.     Conclusion

For the foregoing reasons, the Court **DENIES** the motion for leave to amend the complaint; **DENIES** the motion to modify the scheduling order; **DENIES** summary judgment as to Claim Three; and **GRANTS** summary judgment as to Claim Four.

**IT IS SO ORDERED.**

                                                                                            :
                                                              **Initials of Preparer**    TJ